# STATE OF MICHIGAN

# COURT OF APPEALS

JENNIFER STEPHENS as assignee of JACK EDWARD FRITZ,

        Plaintiff-Appellant/Cross-Appellee,

v

WORDEN INSURANCE AGENCY, L.L.C.,

        Defendant-Appellee/Cross-Appellant,

and

DAVID SHAMALY,

        Defendant-Appellee.

FOR PUBLICATION
October 16, 2014
9:05 a.m.

No. 314700
St. Clair Circuit Court
LC No. 11-001276-NI

Before: BECKERING, P.J., and HOEKSTRA and GLEICHER, JJ.

PER CURIAM.

At issue in this appeal is the statute of limitations applicable to a claim that an insurance agent secured insurance coverage other than that sought by the insured, leaving the insured liable under circumstances where he expected coverage. Such negligent procurement and advice claims sound in ordinary negligence, not malpractice. Accordingly, the three-year statute of limitations found in MCL 600.5805(10) applies. The claim accrued when the insurer denied the insured's claim. As this lawsuit was brought within three years of the accrual date, we reverse the circuit court's summary dismissal on statute of limitations grounds and remand for continued proceedings.

## I. BACKGROUND

In 1998, Jack Fritz first approached agent David Shamaly at the Worden Insurance Agency to secure workers' compensation and general liability insurance for his construction company. Fritz informed Shamaly that his company operated in several states, not just Michigan, and that he required multistate coverage. From 1998 through 2008, Fritz operated under workers' compensation and general liability insurance policies issued by Hastings Mutual Insurance Company, the latest taking effect on April 21, 2008. And Fritz apparently experienced no loss outside of Michigan leading to a claim against the workers' compensation policy.

-1-

On June 7, 2008, Fritz's company was engaged in a construction project in Florida. Fritz's employee, Charles Becker, fell from a ladder and was killed. Fritz contacted Shamaly to report the accident, and Shamaly directed him to contact Hastings directly. When Fritz did so, he learned that the accident would not be covered under the workers' compensation policy because it applied only to accidents occurring in Michigan.

On December 2, 2008, Becker's widow and the personal representative of his estate, Jennifer Stephens, filed suit against Fritz in a Florida circuit court. On September 22, 2010, Fritz and Stephens reached a settlement, under which Fritz was liable for $5,000,000 to Stephens. Stephens promised not to pursue collection against Fritz in exchange for assignment of Fritz's right to pursue indemnification against Worden, Hastings, and any other appropriate entity or person liable in the coverage dispute.

As a result of the settlement agreement, Stephens filed the current action against Worden Insurance Agency and its agent, Shamaly, in the St. Clair Circuit Court on May 31, 2011. Following defendants' first and unsuccessful motion for summary disposition on statute of limitations grounds, the court permitted Stephens to file a three-count amended complaint. Stephens's first count is labeled "negligence" and alleged that Shamaly and Worden "provided coverage which it specifically represented included the state of Florida," despite that it did not. Stephens asserted that Fritz relied upon that representation, as well as the certificates of insurance "specifically expressing the fact that there was appropriate insurance coverage as required by Florida laws." Stephens accused Shamaly and Worden of breaching "the standard of care of a reasonable and prudent agent" by failing to make sufficient inquiry to ensure the proper level of coverage was in place. Worden breached its duty in failing to adequately supervise its agent, Stephens complained. And Stephens suggested that the Hastings certificates of insurance did not indicate that Florida coverage was in place when those certificates arrived at the Worden agency and that defendants "xeroxed and whited out" the documents to make it appear that coverage was available in Florida.

Stephens's second count is entitled "special relationship." Stephens contended that a special relationship arose because Shamaly and Worden "negligently misrepresented the nature and extent of the insurance coverage in Florida." Defendants also voluntarily took on the duty to advise Fritz regarding the adequacy of his coverage, rendering them liable for their negligence. Moreover, defendants "entered into an agreement whereby [they] promised to provide coverage" extending to Florida occurrences. Defendants expressed an expertise in this field but then selected an insurance provider that does not write policies in Florida. Based on this special relationship, Stephens continued, Fritz repeatedly relied upon defendants' advice and purchased whatever policies they recommended. The lack of coverage upon Becker's death "was secondary to the negligence and/or misrepresentation and/or breach of contract and/or breach of the special relationship," Stephens concluded.

The third count in the amended complaint alleged that Worden Insurance Agency was vicariously liable for Shamaly's acts. Shamaly was acting within the scope of his employment and had implied actual authority to act on Worden's behalf, rendering his employer liable. Stephens asserted that Worden knew about and acquiesced in Shamaly's acts as well. Stephens noted that Shamaly "was the only person writing commercial accounts, including workers compensation" and made decisions on behalf of the agency "concerning the practices of issuing

-2-

Certificates of Insurance." Each policy was produced on Worden's behalf. And Shamaly forwarded copies of Fritz's certificate of issuance to many job sites in other states, including Florida, despite that coverage did not actually exist in those states. Moreover, Worden placed Shamaly in a position of authority in which he directed other employees to issue certificates of insurance for work in other states when no such coverage existed. Stephens further alleged that Shamaly violated company policies and industry practices under Worden's supervision, including by failing to confirm where work would be conducted prior to issuing a certificate of insurance and failing to verify the existence of coverage. Worden was liable for Shamaly's transgressions because it allowed him too much freedom, presented him "as its sole commercial producer to customers and clothed him in the appearance of knowledge and experience," and endorsed his representations. In addition, Stephens asserted, Worden ratified Shamaly's acts because it received a commission for the sale of insurance made on Shamaly's misrepresentations.

Defendants' renewed their summary disposition motion contending that Stephens's claims sounded in malpractice and therefore were subject to the two-year statute of limitations. MCL 600.5805(6); MCL 600.5838(1). In the alternative, defendants contended that Stephens's claims were subject to a three-year statute of limitations as an action seeking recovery for damages to a person. MCL 600.5805(10). Under defendants' theory, Stephens's claims accrued on April 21, 2008, when Fritz's insurance policy was last renewed before Becker's accident, and the statute of limitations therefore expired five weeks before Stephens filed her suit.

Stephens responded that her claims sounded in negligence, breach of contract, and fraud, rather than professional malpractice. She argued that her claims against the insurance agent were common-law negligence claims that historically did not fall within the rubric of malpractice. Therefore three and six-year statutes of limitations applied. Her claims were timely, Stephens retorted, because they accrued either on June 7, 2008, when Becker died, or October 26, 2010, when a judgment was entered in the Florida circuit court based on the Fritz-Stephens settlement agreement.

The circuit court found that Stephens's complaint was barred by the statute of limitations and summarily dismissed her action under MCR 2.116(C)(7). Reviewing the manner in which Stephens fashioned her claims, the court determined that they sounded in malpractice. Specifically, Stephens cited the standards of care for an insurance agent and named expert witnesses to testify to that standard. As her claims were filed beyond the two-year statute of limitations, the court found them untimely.

## II. APPLICABLE LEGAL STANDARDS

We review de novo the circuit court's resolution of defendants' summary disposition motion. *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013).

> Summary disposition under MCR 2.116(C)(7) is appropriate when the undisputed facts establish that the plaintiff's claim is barred under the applicable statute of limitations. Generally, the burden is on the defendant who relies on a statute of limitations defense to prove facts that bring the case within the statute. . . . Although generally not required to do so, a party moving for summary

disposition under MCR 2.116(C)(7) may support the motion with affidavits, depositions, admissions, or other admissible documentary evidence, which the reviewing court must consider. . . . If there is no factual dispute, whether a plaintiff's claim is barred under the applicable statute of limitations is a matter of law for the court to determine. [*Id.* at 522-523 (citations omitted).]

In reviewing a motion under (C)(7), the circuit court "must accept the nonmoving party's well-pleaded allegations as true and construe the allegations in the nonmovant's favor. *Diehl v Danuloff*, 242 Mich App 120, 123; 618 NW2d 83 (2000).

We also review de novo the question whether a claim is barred by the statute of limitations and the issue of the proper interpretation and applicability of the limitations periods. See *City of Taylor v Detroit Edison Co*, 475 Mich 109, 115; 715 NW2d 28 (2006); *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 709; 742 NW2d 399 (2007).

## III. STATUTES OF LIMITATION

The statutes of limitations for various actions brought in Michigan courts are set forth in MCL 600.5805. That statute provides in relevant part:

(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

* * *

(6) Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice.

* * *

(10) Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property.

MCL 600.5807 provides a six-year statute of limitations for general contract actions. "All other personal actions" are subjected to a six-year statute of limitations "unless a different period is stated in the statutes." MCL 600.5813.

## III. NATURE OF STEPHENS'S CLAIMS

The resolution of this case hinges on the proper characterization of Stephens's claims. It is well established under Michigan jurisprudence that a court is not bound by the label a party assigns to its claims. Rather, we must consider "the gravamen" of the suit based on a reading of the complaint as a whole. *Buhalis v Trinity Continuing Care Svcs*, 296 Mich App 685, 691-692; 822 NW2d 254 (2012). In this manner, we prevent a party from avoiding an applicable statute of

limitations through "artful drafting." *Simmons v Apex Drug Stores*, 201 Mich App 250, 253; 506 NW2d 562 (1993).

We reject Stephens's argument that her claims could be characterized as sounding in breach of contract. Such a claim would be founded on defendants' breach of a contract with Fritz to secure insurance that would cover his work in other states. Although the Supreme Court has described "the relationship between the insurer and insured" as "a contractual one," it has not found a breach of contract for negligent advice and procurement of insurance. *Harts v Farmer Ins Exch*, 461 Mich 1, 6-7; 597 NW2d 47 (1999). Rather, this Court has characterized an insurance agent's failure to procure requested insurance as a tort. *Holton v A+ Ins Assocs*, 255 Mich App 318, 324-325; 661 NW2d 248 (2003). See also *Zaremba Equipment, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 37-38; 761 NW2d 151 (2008) (holding that an insurance agent who does not procure the insurance coverage requested breaches his duty, suggesting a negligence claim). Accordingly, the six-year statute of limitations described in MCL 600.5807 does not apply.

Stephens's contention that her complaint sounded in fraud is equally without merit. Fraud claims must be pleaded with particularity, addressing each element of the tort. *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008). To properly plead a fraud claim, the plaintiff must allege that (1) the defendant made a representation that was material, (2) the representation was false, (3) the defendant knew the representation was false, or his representation was made recklessly without any knowledge of the potential truth, (4) the defendant made the representation with the intention that the plaintiff would act on it, (5) the plaintiff actually acted in reliance, and (6) the plaintiff suffered an injury as a result. *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012).

Stephens did allege that defendants made a material representation that ultimately proved false: that the workers' compensation policy secured for Fritz would cover occurrences in Florida. She also alleged that defendants intended Fritz to rely upon this representation in purchasing insurance, which he did. Fritz suffered an injury as a result of the misrepresentation when he was denied coverage for Becker's Florida accident. However, Stephens did not plead with particularity that defendants either knew the representation was false, or made it recklessly without any knowledge of the potential truth. Stephens implies recklessness in her complaint by asserting that defendants failed to contact Hastings Mutual and make proper inquiries when they discovered that Fritz's certificates of insurance did not mention Florida coverage. Stephens alleges that defendants instead "xeroxed and whited out rather than investigated" information on Fritz's certificates of insurance. But Stephens never particularly states that such action was taken to defraud Fritz or any customer requesting Fritz's insurance information. She never even identifies the information that was allegedly "whited out." Absent assertions supporting the third element with particularity, we cannot conclude that Stephens properly pleaded a fraud claim.[1]

---

[1] Stephens may of course seek to amend her complaint to remedy its deficiency and plead fraud with particularity. MCR 2.118(A)(2). If she can plead a fraud claim with particularity, it is indisputable that the claim would not be time-barred as the statute of limitations for fraud claims

The question remaining is whether Stephens's claims sound in ordinary negligence or malpractice. There is no statute within the Revised Judicature Act defining malpractice. Defendants contend that malpractice liability adheres to licensed professionals in this state based on MCL 600.5838(1). That statute governs the accrual of "a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession." Relying on this provision for a definition of malpractice would be "erroneous," our Supreme Court has concluded. *Sam v Balardo*, 411 Mich 405, 420; 308 NW2d 142 (1981). "[T]he Legislature did not intend by [MCL 600.5838(1)] to state that every member of a state licensed profession is necessarily subject to malpractice . . . ." *Dennis v Robbins Funeral Home*, 428 Mich 698, 704; 411 NW2d 156 (1987).[2]

Absent a statutory definition, our Supreme Court has repeatedly held that "malpractice" must be given its common-law meaning. *Local 1064, RWDSU AFL-CIO v Ernst & Young*, 449 Mich 322, 329; 535 NW2d 187 (1995), citing *Sam*, 411 Mich at 424. In *Sam*, the Supreme Court held that the statute of limitations found in MCL 600.5805(6) applies to those professions subject to malpractice liability under the common law at the time the Revised Judicature Act was enacted, i.e. 1915. *Sam*, 411 Mich at 424-425. That covered at least medical, legal, and dental malpractice actions. *Id.* at 425, 428. The Legislature's decision to categorize a claim against a state licensed architect as "an action charging malpractice" logically defeats defendants' argument that actions against all state-licensed professionals automatically qualify as malpractice actions. MCL 600.5805(14).

In *Local 1064*, the Supreme Court provided further analysis for a court considering whether a professional could be held liable under a malpractice theory. *Local 1064* defined "the common law" as "[t]hose rules or precepts of law in any country, or that body of its jurisprudence, which is of equal application in all places, as distinguished from local laws and rules," as well as

> [t]he embodiment of principles and rules inspired by natural reason, an innate sense of justice, and the dictates of convenience, and voluntarily adopted by men for their government in social relations. The authority of its rules does not depend on positive legislative enactment, but on general reception and usage, and the tendency of the rules to accomplish the ends of justice. [*Id.* at 329-330 (quotation marks and citations omitted).]

---

is six years. MCL 600.5813; *Boyle v Gen Motors Corp*, 468 Mich 226, 228; 661 NW2d 557 (2003).

[2] The Court of Appeals for the Sixth Circuit has conflated the accrual provision for nonmedical malpractice actions with the definition of "malpractice" see *Kutlenios v Unumprovident Corp*, 475 Fed Appx 550, 553 (CA 6, 2012), as has this Court in unpublished opinions, see *Malburg v Degenais*, unpublished opinion per curiam of the Court of Appeals, issued April 24, 2007 (Docket No. 275229), unpub op at 3. However, we are not bound by decisions of lower federal courts or unpublished opinions of this Court. *Petipren v Jaskowski*, 494 Mich 190, 210; 833 NW2d 247 (2013); MCR 7.215(C)(1).

This "embodiment of principles and rules inspired by natural reason" cannot be limited to a review of only Michigan case law. Rather, "the traditional nature and origin of the common law make it clear that a consideration of judicial decisions from other jurisdictions is not prohibited . . . ." *Id.* at 330.

There are no precedentially binding Michigan cases holding insurance agents or agencies liable under a malpractice theory. Rather, those cases in which an insurance agent failed to procure the type or level of insurance sought by the client or provided negligent advice have sounded in ordinary negligence. See *Zaremba*, 280 Mich App at 37-38; *Holton*, 255 Mich App at 324-325; *Haji v Prevention Ins Agency*, 196 Mich App 84, 87; 492 NW2d 460 (1992); *Century Boat Co v Midland Ins Co*, 604 F Supp 472, 482 (WD Mich, 1985). The same is true throughout many of our sister states. See *Alfa Life Ins Co v Colza*, ___ So 2d ___ (Alaska, 2014), Docket No. 1111415, released May 9, 2014; *Flemens v Harris*, 323 Ark 421; 915 SW2d 685 (1996); *Mark Tanner Constr v Hub Int'l Ins Servs*, 224 Cal App 4th 574, 584-585; 169 Cal Rptr 3d 39 (2014); *Bayly, Martin & Gay, Inc v Pete's Saire, Inc*, 739 P2d 239 (Co, 1987); *Kaufman v CL McCabe & Sons, Inc*, 603 A2d 831, 834 (Del, 1992); *Miles v AAA Ins Co*, 771 So 2d 607, 608 (Fla App, 2000); *Peagler & Manley Ins Agency, Inc v Studebaker*, 156 Ga App 786; 275 SE2d 385 (1980); *Macabio v TIG Ins Co*, 87 Haw 307, 318-319; 955 P2d 100 (1998); *Lee v Calfa*, 174 Ill App 3d 101, 110; 528 NE2d 336 (1988); *Indiana Restorative Dentistry, PC v Laven Ins Agency, Inc*, 999 NE2d 922, 933-934 (Ind App, 2013); *Plaza Bottle Shop, Inc v Al Torstrick Ins Agency, Inc*, 712 SW2d 349 (Ky App, 1986); *Graff v Robert M Swendra Agency, Inc*, 800 NW2d 112 (Minn, 2011); *Busey Truck Equipment, Inc v American Family Mut Ins Co*, 299 SW2d 735, 738 (Mo App, 2009); *Chase Scientific Research, Inc v NIA Group, Inc*, 96 NY2d 20; 725 NYS2d 592; 749 NE2d 161(2001); *Baldwin v Lititz Mut Ins Co*, 99 NC App 559, 561; 393 SE2d 306 (1990); *Robson v Quentin E Cadd Agency*, 179 Oh App 3d 298, 305; 901 NW2d 835 (2008); *Avery v Diedrich*, 294 Wis 2d 769, 771; 720 NW2d 103 (2006).

Declining to extend malpractice liability is also consistent with the role of insurance agents. To qualify for an insurance agent license, a person must complete either 20 or 40 hours of instruction through an accredited home study course, an insurance trade association program, an authorized insurer, or an educational institution. MCL 500.1204a(1). At the conclusion of that instruction, the applicant must pass a licensing exam. MCL 500.1204. Such limited educational and licensing requirements are not commensurate with the "professions" generally deemed subject to professional negligence liability, i.e., malpractice. As described in *Garden v Frier*, 602 So 2d 1273, 1275 (Fla, 1992), a vocation is considered a profession subject to professional malpractice if a higher level of education, such as a graduate degree, is required before a license may be granted. Similarly, in *Plaza Bottle Shop*, 712 SW2d at 350-351, the Kentucky Court of Appeals reasoned that entry into an occupation had to be more strenuous than simple licensure provisions before professional malpractice liability could attach. To hold otherwise would create malpractice actions against such unintended fields as cosmetology and realty. The Kentucky court held that insurance agents "who need have no more education than a high school diploma to qualify for a license" could not be held to a professional standard of care. *Id.* at 351. The Michigan Supreme Court has even refused to extend malpractice liability to some professions with high educational requirements for licensure, such as mortuary science. See *Dennis*, 428 Mich at 704-705.

Absent a common-law basis for subjecting insurance agents to professional malpractice liability, the circuit court erred in applying the malpractice statute of limitations in this case. Rather, Stephens raised an ordinary negligence claim. And the statute of limitations for ordinary negligence claims is three years. *Lemmerman v Fealk*, 449 Mich 56, 63-64; 534 NW2d 695 (1995); MCL 600.5805(10).

## IV. TIMELINESS OF STEPHENS'S CLAIMS

The parties also do not agree on the date on which Stephens's claim accrued.[3] The MCL 600.5805(10) describes that the limitations period expires "3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property." The accrual of claims subject to this statutory period is governed by MCL 600.5827. *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 387; 738 NW2d 664 (2007). MCL 600.5827 describes that a "claim accrues at the time provided in [MCL 600.5829 to MCL 600.5838], and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." None of the cited statutes relate to general negligence claims or more specifically to negligent procurement or advice claims against an insurance agent. Accordingly, Stephens's claims accrued "at the time the wrong upon which the claim is based was done regardless of the time when damage results."

"For purposes of MCL 600.5827, the term 'wrong' refers to *the date on which the plaintiff was harmed by the defendant's act*, not the date on which the defendant acted negligently because that would permit a cause of action to be barred before any injury resulted." *Schaendorf v Consumers Energy Co*, 275 Mich App 507, 512; 739 NW2d 402 (2007) (emphasis added). A tort claim accrues "when all the elements of the claim have occurred and can be alleged in a proper complaint." *Id.*; see also *Stephens v Dixon*, 449 Mich 531, 534-535; 536 NW2d 755 (1995). Damages may recur after a claim accrues. But there must be an initial injury for a claim to exist and it is that injury that triggers the running of the limitations period. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 289-290; 769 NW2d 234 (2009).

The accrual of a negligent procurement or advice claim is an issue of first impression in Michigan. And the issue has received diverse treatment nationwide. Some jurisdictions have held that the "wrong" occurs when the insurance agent commits his negligence by procuring deficient coverage. See *Kaufman*, 603 A2d 831 (Delaware); *Filip v Block*, 879 NE2d 1076, 1082 (Ind, 2008);. Other jurisdictions delay the date of the injury because "[i]f no accident produces a claim, the failure will have been negligence in the abstract." *Int'l Mobiles Corp v Corroon & Black/Fairfield & Ellis, Inc*, 29 Mass App Ct 215, 219; 560 NW2d 122 (1990). Therefore, some jurisdictions have held that the claim accrues when the insured experiences the event for which no coverage is available. *Id.*, see also *Cunningham v Ins Co of North America*, 521 F Supp 2d

---

[3] As Fritz assigned his rights to Stephens in settlement of her Florida lawsuit, Stephens's claims against the current defendants accrued on the date Fritz's claims would have done so. MCL 600.5841.

166, 172 (ED NY, 2006). Others assert that the claim accrues when insurance coverage is ultimately denied. *Broadnax v Morrow*, 326 Ill App 3d 1074, 1081; 762 NE2d 1152 (2002); *Johnson & Higgins of Texas, Inc v Kenneco Energy, Inc*, 962 SW2d 507, 514 (Texas, 1998). Still others wait until the underlying coverage dispute has been resolved by litigation before starting the clock on a negligent procurement claim. *Blumberg v USAA Cas Ins Co*, 790 So2d 1061; 1065 (Fla, 2001); *Kosa v Ferderick*, 136 Oh App 3d 837, 840; 737 NE2d 1071 (2000).

Today we hold that a negligent procurement or advice claim accrues when the insurer denies the insured's claim. On that date any speculative injury becomes certain, and the elements of the negligence action are complete.

In this regard, we find *Holton* instructive. In *Holton*, 255 Mich App at 324, this Court noted that "Michigan law recognizes a cause of action in tort for an insurance agent's failure to procure requested insurance coverage." For comparative fault purposes, this Court described the negligent procurement action "as arising out of an insurance *claim*." *Id.* at 325 (emphasis added). No negligence action can exist until a claim is made because, until that moment, there can be no actual damage. See *id.* ("[P]laintiffs' claim is that their damages occurred because of inadequate insurance coverage, not because of the home fire."). As the underlying event is not the trigger for the cause of action, Becker's death cannot be the accrual date for Stephens's claims. Similarly, the date on which defendants advised Fritz or procured the insurance policy, or on which the policy took effect cannot be deemed the accrual date because any injury or damage was merely speculative at that point.

Delaying accrual until the resolution of any coverage litigation is also insupportable under Michigan law. The elements of the negligence claim are complete when the claim is denied. Therefore, the insured can file its negligence action contemporaneously or even in conjunction with its coverage dispute.

The record does not reveal the exact date when Fritz filed his claim with Hastings Mutual or when Hastings Mutual denied coverage. The record instructs that Becker died on June 7, 2008, however, and the claim must have been filed and denied on or after that date. Fritz therefore would have had until at least June 7, 2011, to file a negligent procurement and advice suit against defendants. Stephens, as Fritz's assignee, filed her complaint on May 31, 2011, a full week before the earliest possible expiration of the statutory limitations period. Accordingly, her claim was timely and the circuit court erred in dismissing it pursuant to MCR 2.116(C)(7).

## V. VICARIOUS LIABILITY

Worden argues in the alternative that the circuit court could have dismissed Stephens's vicarious liability claims against it.[4] Worden does not cite a court rule provision supporting dismissal of this claim. As some discovery had been conducted augmenting the allegations in

---

[4] Worden raised this challenge below, but the circuit court did not reach this issue because it resolved the matter on statute of limitations grounds.

Stephens's complaint, we will review the propriety of Worden's request under MCR 2.116(C)(10).

A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).]

Worden contends that Shamaly acted outside the scope of his employment, negating any claim of vicarious liability. Specifically,

Shamaly testified in his deposition . . . that if he had done as claimed[,] he would have violated the policy of the Worden Agency to only procure issuance of policies . . . in conformance with an insurer's underwriting guidelines, since the underwriting guidelines of Hastings Mutual . . . limited workers' compensation coverage only to work being performed in Michigan.

Stephens presented sufficient evidence to overcome summary disposition on this ground.

The doctrine of respondeat superior is well established in this state: An employer is generally liable for the torts its employees commit within the scope of their employment. . . . This Court has defined "within the scope of employment" to mean "'engaged in the service of his master, or while about his master's business.'" Independent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment. Although an act may be contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business. [*Hamed v Wayne Co*, 490 Mich 1, 10-11; 803 NW2d 237 (2011) (citations omitted).]

Here, Shamaly was acting in the interest of his employer, Worden. Although his sale of insurance resulted in a commission for Shamaly, it also resulted in profit for Worden. It was Shamaly's job to secure commercial insurance policies for Worden's customers. Shamaly acted within the parameters of his job description when he procured the Hastings Mutual policy for Fritz, even if his job performance was negligent or not in conformance with his employer's instructions. Accordingly, we reject Worden's alternate ground for affirming the dismissal of Stephens's claims against it.

We reverse and remand for continued proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Joel P. Hoekstra
/s/ Elizabeth L. Gleicher