# STATE OF MICHIGAN

# COURT OF APPEALS

LAND ESCAPE OUTDOOR MAINTENANCE, L.L.C.,

       Plaintiff-Appellant,

v

INSURANCE ADVISORS, INC.,

       Defendant-Appellee.

UNPUBLISHED
August 13, 2015

No. 321859
Oakland Circuit Court
LC No. 2013-132302-CZ

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

Land Escape Outdoor Maintenance (LEOM) filed suit against Insurance Advisors (IA), the independent insurance agency through which it procured the insurance necessary to cover its business needs, for misrepresenting the level of coverage available for a particular dump truck under a commercial automobile policy. In its complaint, LEOM raised challenges based solely on an erroneous statement in a General Change Endorsement issued by Secura Insurance Company on December 22, 2010. Because Secura, not IA, made the particular misrepresentation, the circuit court correctly dismissed LEOM's complaint, and we affirm that decision.

However, the circuit court improperly denied LEOM the opportunity to amend its complaint based on evidence gathered through discovery that an IA representative had earlier misrepresented the scope of coverage available under the policy's comprehensive-coverage section. Accordingly, we reverse that portion of the circuit court's order and remand for further proceedings in that regard.

## I. BACKGROUND

LEOM is a landscaping company. For a decade, LEOM employed IA to secure the type of insurance it needed to cover its business needs. In the beginning of this relationship, LEOM's owner and operator, Chris Yatooma, informed his IA agent that his company placed several pieces of equipment into storage each winter and wanted to reduce their insurance coverage during those months. The agent recommended purchasing a policy through Secura. For the next ten years, Yatooma or a member of his staff would contact IA in the fall with a list of vehicles and equipment to place on storage-level coverage. Each spring, they would contact IA to return to full coverage. IA, in turn, dealt with Secura to ensure the transactions occurred smoothly.

-1-

On June 20, 2011, an LEOM-owned dump truck was involved in a motor vehicle accident, and the other party filed suit. Secura defended LEOM, but reserved its rights, contending that the vehicle did not have liability coverage at that time. On November 24, 2010, LEOM had requested through IA that coverage on the vehicle be reduced to comprehensive only. Secura erroneously prepared the General Change Endorsement involved in this change request, and indicated that only liability insurance had been maintained on the vehicle. Other documents accompanying the endorsement revealed that liability coverage had actually been eliminated. Based on the General Change Endorsement alone, Yatooma had determined that no change was required in the spring of 2011, and he did not contact IA to restore any coverages. Secura filed a declaratory judgment action to determine its duties and rights.

During the course of Secura's declaratory judgment action, LEOM filed suit against IA. LEOM factually asserted that the "coverage was provided by Secura," but averred that IA "sent" LEOM a "General Change Endorsement" indicating that the F800 "was amended 'to liability only coverage.' " LEOM accused IA of "represent[ing] that the liability coverage would be in effect until August 10, 2011." LEOM relied upon that information and "renewed the registration for" the dump truck "with the Michigan Secretary of State." After describing Secura's declaratory judgment action, LEOM stated, "If the Court rules in favor of Secura in the Declaratory Action, [IA's] 'mistake' will cost [LEOM] potentially hundreds of thousands of dollars." LEOM accused IA of fraudulent and negligent misrepresentation in relation to the statement in the General Change Endorsement. LEOM also accused IA of negligence in "breach[ing] its duty to use reasonable care in ensuring that its customers have the insurance coverage that [IA] tells them they do by incorrectly informing [LEOM] that the F800 had liability coverage from November 24, 2010 through August 10, 2011."

While the complaint centered on the December 22, 2010 General Change Endorsement, information gathered during discovery centered on a conversation Yatooma had with an IA representative in approximately 2000 regarding the level of coverage available for a vehicle placed "in storage." Specifically, Yatooma testified at his deposition that "when [he] initiated insurance with [IA], I specifically discussed the elements of the storage insurance, what we refer to as storage insurance. And it was my understanding very clearly that I would be covered from liability resulting of [sic] a claim."

Yatooma described:

> [I]t was specifically discussed that I was covered from any liability resulting from a claim, a covered loss, meaning if the - - and one thing we had talked about was like if it got hit by lightning and it blows up, you know, it's covered because it's in storage and it's a covered loss, but of course, you're thinking of a vehicle blowing up, thinking of a fuel tank, thinking of injuries and damage to a surrounding area. And I specifically discussed would I be covered for something like that, and the answer was yes.

Yatooma further believed a certain level of liability coverage would apply if the vehicle was stolen while in storage:

*A.* . . . If the vehicle was stolen, the - - that was covered, that was covered even under the storage insurance, and so not only would I be covered for the loss of the equipment, but the resulting liability.

*Q.* I see. So you believe that you have coverage in this case - -

*A.* Either way.

*Q.* Because - - either way. One, because you had liability coverage and you believed you have liability coverage and you've explained that, correct?

*A.* Yes, absolutely.

*Q.* And two, . . . as I, Chris Yatooma, propose, because it was stolen and it got into an accident, then I had coverage even if it had just storage coverage on it?

*A.* That's correct. . . . I know we talked about theft was covered, what we specifically talked about was the resulting liability from a covered loss. And if I took it out and drove it and got in an accident, that would not be covered. But I'm pretty sure we discussed if it was driven and stolen and got - - you know, you think of someone taking a dump truck to steal it, I mean, there's a good chance that they're - - people don't - - dump trucks aren't high in the desire to be stolen. So if someone's stealing a dump truck, they might be joy riding, they might be high, there's a good chance there would be resulting liability from that theft.

*Q.* Okay.

*A.* And the question - - the discussion we had, that that would be covered from the resulting liability just as we have here.

The inquiry continued:

*Q.* All right. But I think from your testimony a moment ago, you realized that while vehicles were in storage, that did not mean to you that you had coverage while vehicles were being operated on public highways except perhaps other than for whatever minimum coverage might be?

*A.* Yeah, so my understanding was that if I was driving the vehicle, if it was in storage, you know, and I or someone on behalf of the company, if it was stolen, it would be covered or if it wasn't, it wouldn't be, or there would be very minimum coverage.

\* \* \*

*Q.* . . . I just want to clarify what your understanding was. Your understanding was that if a vehicle was in storage, someone stole a vehicle, took it

out on a highway and got in an accident, that [LEOM] would have full liability coverage as if the vehicle had never been put in storage?

*A.* Correct, that was my understanding.

\* \* \*

*Q.* Again, sir, my question, though, and I don't believe you've answered it, do you have a recollection of discussing at the time of this conversation the specific scenarios such as the claims involved in this case, someone stealing a vehicle that's in storage and taking it out on the highway and getting involved in an accident?

*A.* The fact that we discussed that specific scenario, I'm not sure. Honestly I believe so, but I'm not positive.

Overall, Yatooma understood that storage coverage meant comprehensive coverage. As defined in the Secura insurance policy, comprehensive coverage includes:

1. We will pay for "loss" to a covered "auto" or its equipment under:

a. Comprehensive Coverage

From any cause except:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

A "loss," in turn, is defined as "direct and accidental loss or damage." However, Yatooma explained that because of his conversation with an unidentified IA representative, he thought the scope of coverage he was purchasing included an element of liability coverage, separate from the general liability provision in the Secura contract.

Following discovery, IA filed a motion for summary disposition. IA first contended that an insurance agent is a member of a state licensed profession and therefore actions against such an agent must be brought within the two-year statute of limitations of MCL 600.5838(1), (2) and MCL 600.5805(6). IA processed LEOM's change request on December 9, 2010. Therefore, LEOM's 2013 complaint was time barred. IA further contended that LEOM failed to create a genuine issue of material fact that IA made either a fraudulent or negligent misrepresentation as the error in the General Change Endorsement was made by Secura.

LEOM retorted that a six-year statute of limitations applied to its claims. It challenged that IA had made the statement in the General Change Endorsement. LEOM continued that there still remained a question of fact whether the independent contractor driving the dump truck at the time of the accident had stolen the vehicle. If the truck was stolen, Yatooma's belief based on a conversation with an IA representative that full coverage would apply would come into play. Until that determination was made, LEOM contended, summary disposition would be premature.

-4-

The circuit court granted IA's motion, not on statute-of-limitations grounds, but on MCR 2.116(C)(10) grounds:

> As to [IA], the Court finds that summary disposition is appropriate. There is no evidence that [IA] made any fraudulent or negligent representations to [LEOM]. The "General Change Endorsement" was not prepared or issued by [IA]. Because the Court has already determined that any reliance only that document was not reasonable, amending the Complaint would be futile.

This appeal followed and was submitted with the consolidated appeals in Docket Nos. 320943, 321190, and 321856.

## II. STANDARD OF REVIEW

We review de novo a circuit court's resolution of a summary disposition motion. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).

> A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. [*Zaher*, 300 Mich App at 139-140.]

We review unpreserved issues, such as LEOM's claims based on IA's inaccurate description of comprehensive coverage, for plain error. "Plain error occurs at the trial court level if (1) an error occurred (2) that was clear or obvious and (3) prejudiced the party, meaning it affected the outcome of the lower court proceedings." *Durray Development, LLC v Perrin*, 288 Mich App 143, 150; 792 NW2d 749 (2010).

## III. ANALYSIS

The circuit court properly dismissed LEOM's claims based on the statement in the General Change Endorsement that liability insurance had been added for the vehicle. Secura made that statement, not IA. However, during discovery, LEOM presented evidence that an IA representative had misrepresented the scope of coverage available under comprehensive coverage, leading Yatooma to believe that liability coverage would be available in certain situations. The circuit court should have permitted LEOM to amend its complaint to raise such a claim. Accordingly, although we affirm the grant of summary disposition in IA's favor, we reverse the order denying LEOM the opportunity to amend its complaint and remand for further proceedings.

## A. FRAUDULENT AND NEGLIGENT MISREPRESENTATION CLAIMS

The first two claims dismissed by the circuit court sounded in fraudulent and negligent misrepresentation and were based on the General Change Endorsement's notation that liability-only coverage had been added to the policy for the subject dump truck. To establish either claim, a plaintiff must prove that the defendant made a representation that proved to be false. See *Barclae v Zarb*, 300 Mich App 455, 476; 834 NW2d 455 (2014).

Here, LEOM failed to rebut IA's evidence that Secura prepared the General Change Endorsement and made the erroneous notation. Specifically, the December 9, 2010 policy change request submitted by IA to Secura reveals that IA directed Secura to implement the level of coverage desired by LEOM. Jennifer Medwid, the IA representative then handling LEOM's account, testified at her deposition that Secura "writ[es]" "whatever coverages" LEOM requested through IA, and that IA had no role in the insurance writing process. Medwid further indicated that Secura prepared the General Change Endorsement and mailed it directly to LEOM. Regarding the erroneous notation on the General Change Endorsement, Medwid testified that "the processing person who keyed it, keyed the endorsement request properly, but their one sentence summary is inaccurate." Medwid was referring to a Secura employee.

LEOM never countered Medwid's testimony that Secura prepared and mailed the General Change Endorsement, rather than IA. Therefore, LEOM cannot establish even the threshold element of a fraudulent or negligent misrepresentation claim. Accordingly, the circuit court correctly granted summary disposition in IA's favor.

## B. NEGLIGENCE

LEOM raised a separate negligence claim in its complaint, asserting that IA had "a duty to exercise reasonable care to ensure that its customers actually have the insurance coverage that [IA] represents to the customers that they have." LEOM asserted that IA breached its duty "by incorrectly informing [LEOM] that the F800 had liability coverage from November 24, 2010 through August 10, 2011." The claim suggests two things: (1) it repeats the earlier claim that IA negligently misrepresented to LEOM that it had liability coverage, and (2) it faults IA for not reviewing its copy of the General Change Endorsement and notifying LEOM of the error.

As noted, IA did not make the representation in the General Change Endorsement and therefore the circuit court properly dismissed LEOM's claim in that regard. In relation to its claim that IA bore a duty to review the finished insurance documents forwarded by Secura and inform LEOM of the error, LEOM cites no legal authority. In fact, LEOM has made no argument whatsoever in its appellate brief regarding this issue. Accordingly, LEOM has abandoned its claim. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002).

## C. NEGLIGENT PROCUREMENT

On appeal, LEOM contends that IA made negligent or fraudulent misrepresentations about the scope of coverage available to a car placed "in storage." Based on a conversation that occurred in approximately 2000 with a former IA representative, Yatooma claimed to believe that any liability arising out of an event included in comprehensive coverage would also be

covered. Yatooma was certain the agent told him that liability to third parties caused by a fire or explosion involving a vehicle in the storage yard would be covered. He was not as certain whether the agent specifically discussed coverage for liability to third parties caused by a thief who stole a stored vehicle and drove it on the road. However, Yatooma expressed that based on the agent's representation, he "honestly believed" that liability coverage would be available for a stolen stored vehicle.

If the IA agent made these statements, they were erroneous. Under the policy as quoted above, comprehensive and liability coverage are separate and distinct and do not overlap. According to the plain language of the policy, there is no liability coverage for a comprehensive-covered event unless the insured has also secured liability coverage.

Beyond the current policy, it is generally accepted that liability coverage is distinct from "comprehensive" coverage. Comprehensive coverage is a type of property coverage. 11 Couch, Insurance § 156.1, § 156.19. "Automobile property insurance coverages are unique forms of insurance that have some relationship" to other types of property insurance. 11 Couch, Insurance, § 156.4, p 156-10. While possession of liability insurance is strongly favored "to protect the public at large," automobile property insurance protects the owner's investment. Therefore, there is no public policy mandate for automobile property insurance, such as comprehensive coverage. *Id.*, pp 156-10 – 156-11.

As LEOM failed to raise this claim in its complaint, the question is whether the court should have allowed LEOM to amend its complaint to add this count after discovery. MCR 2.116(I)(5) demands that if a court finds summary disposition appropriate under MCR 2.116(C)(10), the court must allow the plaintiff the opportunity to amend its complaint "unless the evidence then before the court shows that amendment would not be justified." Through Yatooma's deposition, LEOM had placed evidence before the circuit court that supported a negligent advice or procurement claim. And the circuit court should have allowed LEOM the opportunity to amend its complaint to raise this claim.

LEOM continues to characterize his claim as one for negligent or fraudulent misrepresentation, claiming that the IA representatives made false statements about the level of coverage available to a vehicle in storage. The claim goes deeper than that. LEOM contends that it desired a certain level of coverage, IA represented that such coverage could be obtained through Secura, and then IA secured a policy on LEOM's behalf that did not provide the level of coverage represented. This claim sounds in negligent advice or procurement. Courts are not bound by the labels a party applies to its claims. *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 228-229; 859 NW2d 723 (2014). Instead, we must look to "the gravamen" of the complaint. *Id.* at 229.

In *Harts v Farmer Ins Exch*, 461 Mich 1, 7; 597 NW2d 47 (1999), our Supreme Court noted that an agent who works for an insurance company is an agent of the company, not the insured. As a general rule, such agents have no duty to advise an insured regarding the adequacy of coverage. *Id.* This is because generally "the agent functions as simply an order taker for the insurance company." *Id.* at 9. This situation "is subject to change when an event occurs that alters the nature of the relationship between the agent and the insured." *Id.* at 9-10. A "special

relationship" is formed, creating a duty on the insurance agent's part when certain conditions exist:

> [T]he general rule of no duty changes when (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured. [*Id.* at 10-11.]

As noted by this Court in *Zaremba Equipment, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 28; 761 NW2d 151 (2008) (*Zaremba I*), "When a special relationship exists, an agent assumes a duty to advise the insured regarding the adequacy of insurance coverage."

Here, Yatooma allegedly inquired whether LEOM would be covered for any liability arising from a comprehensive-covered event. Yatooma described that the IA agent gave advice on this matter. And that advice turned out to be inaccurate. Accordingly, LEOM has established facts that could support claim against IA based on the advice given in procuring the Secura policy.

That Yatooma could have discovered that no liability coverage flowed with comprehensive coverage by reading the policy is not fatal. First, unlike the plaintiff in *Zaremba I*, Yatooma never indicated that he did not read the insurance policy. See *id.* at 33. The descriptions of liability and comprehensive coverage were found in the body of the contract, a contract which was renewed annually for a decade. Yatooma only admitted that he had not read certain new endorsements and forms issued in December 2010. Second, even if Yatooma later admits that he failed to read the policy, that failure would amount to comparative negligence that could be considered by the jury. See *id.*

Accordingly, we reverse that portion of the circuit court's order finding that amendment of the complaint would be futile and remand the matter to the circuit court for further proceedings.

## D. STATUTE OF LIMITATIONS

In the alternative, IA contends that the circuit court could have dismissed the claims against it based on the statute of limitations for professional malpractice claims. We address this issue because it would also apply to the timeliness of any claims raised in an amended complaint. Exactly one week after IA filed its appellate brief, this Court issued a published opinion rejecting that insurance advisors are "professionals" for purposes of the malpractice statute of limitations. In connection with a negligent procurement and advice lawsuit, this Court noted that the Legislature did not intend to make every licensed profession subject to malpractice liability. *Stephens*, 307 Mich App at 231-232. Rather, the statute of limitations found in MCL 600.5805(6) applies only to those professions that were subject to malpractice liability under the common law in 1915, when the statute was first enacted. This included physicians, attorneys, surgeons, and dentists. *Id.* at 232.

This Court found no Michigan case law and little case law from around the nation supporting the application of malpractice liability to insurance agents. *Id.* at 233.

> Declining to extend malpractice liability is also consistent with the role of insurance agents. To become licensed as an insurance agent, a person must complete either 20 or 40 hours of instruction through an accredited home study course, an insurance trade association program, an authorized insurer, or an educational institution. MCL 500.1204a(1). At the conclusion of that instruction, the applicant must pass a licensing exam. MCL 500.1204. Such limited educational and licensing requirements are not commensurate with the professions generally deemed subject to professional negligence liability, i.e., malpractice. As described in *Garden v Frier*, 602 So 2d 1273, 1275 (Fla, 1992), a vocation is considered a profession subject to professional malpractice if a higher level of education, such as a graduate degree, is required before a license may be granted. Similarly, in *Plaza Bottle Shop v Al Torstrick Ins Agency*, 712 SW2d 349, 350-351 (Ky App, 1986), the Kentucky Court of Appeals reasoned that entry into an occupation had to be more strenuous than simple licensure provisions before professional malpractice liability could attach. To hold otherwise would have created malpractice actions against such unintended fields as cosmetology and realty. The Kentucky court held that insurance agents "who need have no more education than a high school diploma to qualify for a license" could not be held to a professional standard of care. *Id.* at 351. The Michigan Supreme Court has even refused to extend malpractice liability to some professions with high educational requirements for licensure, such as mortuary science. See *Dennis* [*v Robbins Funeral Home*, 428 Mich 698, 704-705; 411 NW2d 156 (1987)]. [*Id.* at 233-234.]

That insurance agents do not require the type of training consistent with licensed professionals subject to malpractice liability is supported by Medwid's own testimony. When asked about her educational background, Medwid indicated, "My education isn't really relevant, but I went to Florida Atlantic University," where "I majored in English and education."

Here, LEOM raised tort claims against the insurance agency—fraudulent and negligent misrepresentation, negligence, and negligent procurement and advice. IA's potential tort liability does not lie in professional malpractice, but in ordinary tort principles. Accordingly, IA would not be entitled to summary disposition on statute of limitations grounds.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens