# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN ALLEN LIEBERMAN,

        Plaintiff-Appellee,

v

KIMBERLY ANN ORR, formerly known as
KIMBERLY ANN LIEBERMAN,

        Defendant-Appellant.

FOR PUBLICATION
March 7, 2017
9:00 a.m.

No. 333816
Clinton Circuit Court
LC No. 13-024442-DM

Before: M. J. KELLY, P.J., and O'CONNELL and BECKERING, JJ.

BECKERING, J.

In this child custody matter, defendant Kimberly Orr appeals as of right the trial court's order granting plaintiff John Lieberman's motion to change parenting time and the children's schools.[1] Defendant contends on appeal that, not only did the proposed change affect the

---

[1] Plaintiff contends that the post-judgment order appealed from does not change the established custodial environment and, therefore, is not a final order appealable by right under MCR 7.202(6)(a)(*i*). In a one-page brief accompanying supplemental authority, plaintiff further argues that the order is not appealable under MCR 7.202(6)(a)(*iii*) pursuant to this Court's recent decisions in *Ozimek v Rodgers*, __ Mich App __; __ NW2d __ (2016) (Docket No. 331726), and *Madson v Jaso*, __ Mich App __; __ NW2d __ (2016) (Docket No. 331605). Plaintiff contends that these cases stand for the proposition that post-judgment orders affecting a change in schools (*Ozimek*) or a modification of parenting time (*Madson*) are not appealable by right. *Madson* involved an interim order providing for makeup parenting time while the parties prepared for a new custody determination and, therefore, is sufficiently distinguishable from this case as to be inapplicable. Although *Ozimek* is more to the point, plaintiff has overlooked one important exception to the general proposition he derives from *Ozimek*: an order affecting a change in schools that also affects "the amount of time spent between the child and either parent" affects custody and is appealable by right. *Ozimek*, __ Mich App at __; slip op at 5. Contrary to the dissent's implication, this Court dismissed *Ozimek* for lack of jurisdiction not simply because it involved a question of legal custody, but because the disputed order denying a motion to change schools did not affect custody. Such is not the case here. For the reasons set forth in this opinion, although the trial court characterized its ruling as merely a change of schools and a

-1-

established custodial environment the children had with her, but also by granting plaintiff's motion, the trial court effectively changed primary physical custody of the children from her to plaintiff without reviewing plaintiff's motion under the correct legal framework. We agree, and therefore, we vacate the trial court's order and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

After the parties' marriage dissolved, the trial court entered a consent judgment of divorce in March of 2008 that awarded defendant sole physical custody and the parties' joint legal custody of the two minor children. The consent judgment gave plaintiff parenting time of one midweek overnight per week, every other weekend, four weeks during summer vacation, and alternating holidays. Minor modifications to plaintiff's parenting time schedule were made in 2008 and 2009.

In July of 2010, defendant moved to change the children's residence from East Tawas to DeWitt, where defendant had obtained a fulltime job. Plaintiff opposed the motion, and countered it with a motion to change custody. Plaintiff asked the court, among other things, to order psychological examinations for the parties and the children and an in camera interview with the children to determine their preferences. Stressing his present involvement and anticipated future involvement in the children's academic development, plaintiff asked the court to "[o]rder a change in custody that awards Plaintiff parenting time during the school year, and Defendant parenting time based upon the testimony elicited at hearing [sic] in this matter." Plaintiff appears to have withdrawn his motion subsequent to the parties' February 23, 2011 stipulated modification of parenting time. Pursuant to the terms of the modification, the children would continue to live with defendant during the school year, and plaintiff would receive parenting time three weekends per month during the school year and all but the first and last weeks of the children's summer vacation. The trial court entered a corresponding, modified uniform child support order showing that plaintiff had 140 overnights per year with the children, and defendant had 225.

In April of 2013, pursuant to a motion filed by the Iosco County friend of the court, the trial court entered an order transferring the parties' case to Clinton County.[2] In December of 2013, defendant filed a motion requesting parenting time on alternating weekends throughout the year. She based her request on allegations that plaintiff violated parenting time by not ensuring her telephonic access to the children during the children's summer vacation, and on her employer no longer requiring her to work weekends. Plaintiff opposed the motion, arguing that the proposed reduction in his parenting time from 140 to 88 days—a reduction of 52 days—would alter his established custodial environment with the children.

---

modification of parenting time that did not affect the established custodial environment, the trial court's order did affect the custody of the minor children, and, therefore, is appealable as of right pursuant to MCR 7.202(6)(a)(*iii*).

[2] The court indicated to the parties in 2011 that, after resolution of a property matter unrelated to the instant dispute, a change of venue and transfer of the matter would be initiated as neither party resided in Iosco or an adjacent county. MCR 3.212.

The referee who heard defendant's motion noted that the parents shared joint legal custody, defendant had "primary physical custody," and plaintiff had parenting time as provided in the parties' February 23, 2011 stipulated agreement. The referee also found that there was an established custodial environment with each parent, and that the proposed 52-day reduction in plaintiff's parenting-time schedule would change the established custodial environment that the children had with him. Therefore, according to *Shade v Wright*, 291 Mich App 17, 25-28; 805 NW2d 1 (2010), resolution of defendant's motion was governed by the legal framework set forth in *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003). Employing this framework, the referee found that defendant had failed to establish the proper cause or change in circumstances necessary to proceed to a hearing to determine whether a change in parenting time was in the best interests of the children. The trial court denied defendant's objection to the referee's recommendation, but told defendant that she could submit for the court's consideration an amended motion proposing a parenting time modification that did not alter plaintiff's established custodial environment. Defendant filed an amended motion, which the court rejected because it reduced plaintiff's parenting time by 20 days, from 140 to 120 days. The court stated that defendant could file a motion that reallocated plaintiff's parenting time, but not one that reduced it.

In May of 2016, plaintiff filed a motion to "modify parenting time and change schools," requesting "essentially that the parties swap the current parenting time schedule." Plaintiff based his motion on concerns about the children's academic opportunities and one child's academic performance. Plaintiff contended that the youngest child ended his fourth grade year in the 50th percentile in reading and 63rd percentile in math, and that the goal should be the 80th percentile. Plaintiff further observed that he had taken the child to Sylvan Learning Center to arrange for the tutoring the child needed to improve academically, and that he would be better than defendant at helping the child achieve his academic potential.[3] In addition, plaintiff noted that the older child had "reached adolescence" and wanted to spend more time with plaintiff, with whom he could explore his interests in history and science. Plaintiff also cited concerns with the children's hygiene, pertaining to regular nail trimming and dental checkups. Plaintiff asserted that the February 23, 2011 stipulated modification of parenting time provided for "both joint legal and physical custody" of the children. He further asserted that, "If the Court was to grant plaintiff's swap of parenting time schedules, because there is no material change in the amount of time the children spend in each household, and both parents would continue to share in providing love, support, and guidance of the minor children, the joint custodial environment would not be changed." Accordingly, plaintiff asserted that the relevant legal framework governing his

---

[3] Testimony at the evidentiary hearing on plaintiff's motion came from Catherine Ringey, Center Director for Sylvan Learning Center. No one from the child's school testified at the hearing regarding his academic progress or standing. Ringey admitted on cross-examination that the child was reading at his grade level, or close to it Defendant's attorney pressed her and noted that to be at his grade level equivalent, he should have scored a 4.8, however his assessment scored a 4.7 According to Ringey, this was still the equivalent of reading in the 50th percentile. Two exhibits were shown regarding math tests the child took in March and May of 2016. On the test in March he scored an 82. On the test in May, he scored a 92.

motion was set forth in *Shade v Wright*, 291 Mich App 17, 25-28; 805 NW2d 1 (2010), under which normal life occurrences can constitute a change in circumstances sufficient to proceed to an evidentiary hearing regarding whether the proposed modification of parenting time was in the children's best interests. Plaintiff stated, "If the Court grants Plaintiff Father's modification of parenting time, the minor children will attend The Midland Academy of Advanced and Creative Studies . . . beginning in the academic year 2016-2017."

In her response to plaintiff's motion, defendant disputed that the parties shared joint physical custody and that plaintiff's proposed change would not significantly change the amount of time the children spent in each household, and contended that plaintiff's proposed changes would alter the established custodial environments that the children have with each parent. Defendant also filed a motion to dismiss plaintiff's motion on the ground that, notwithstanding its label, it was actually a motion to change custody, and plaintiff had not made the threshold showing of a proper cause or change in circumstances as set forth in *Vodvarka*.

In its ruling from the bench, the trial court characterized this case as primarily a legal custody issue "about changing schools," and viewed the parenting time issue as subordinate to the school issue. In the words of the court, "The parenting time request is really if [the school change] is made how can parenting time . . . with each parent be accommodated." The trial court found that an established custodial environment existed with both parents and that changing the children's schools would not affect the established custodial environments. Accordingly, the court determined that, in order to succeed in his motion, plaintiff had to prove by a preponderance of the evidence that changing schools was in the best interests of the children. After addressing all of the statutory best-interest factors, MCL 722.23, and making findings on those relevant to the issue of changing schools, the trial court concluded that a preponderance of the evidence showed that changing schools was in the children's best interest. To accommodate this decision, the court granted plaintiff's motion to modify parenting time, reversing the existing parenting-time order so that plaintiff had 225 overnights per year, and defendant 140. In doing so, the trial court reduced the children's overnights with defendant by 85 days, or nearly three months.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"All custody orders must be affirmed on appeal unless the circuit court's findings were against the great weight of the evidence, the circuit court committed a palpable abuse of discretion, or the circuit court made a clear legal error on a major issue."[4] MCL 722.28; *Pierron*

---

[4] A court is not bound by what litigants choose to label their motions "because this would exalt form over substance." See *Johnston v City of Livonia*, 177 Mich App 200, 208; 441 NW2d 41 (1989). Rather, courts must consider the gravamen of the complaint or motion based on a reading of the document as a whole. See *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 229; 859 NW2d 723 (2014). As indicated above, the trial court characterized plaintiff's motion as primarily a legal custody issue "about changing schools"; plaintiff adopts this

*v Pierron*, 282 Mich App 222, 242; 765 NW2d 345 (2009); aff'd by *Pierron v Pierron*, 486 Mich 81; 782 NW2d 480 (2010).

> The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [*Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009) (quotation marks and citations omitted).]

"The applicable burden of proof is a question of law that is reviewed de novo on appeal." *Pierron*, 282 Mich App at 243 (quotation marks and citation omitted).

## B. RELEVANT LEGAL STANDARDS

The purpose of the Child Custody Act, MCL 722.21 *et seq.*, is to "promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes." *Id*. at 243. Constant changes in the child's physical custody can wreak havoc on that child's stability, as can other orders that may significantly affect the child's best interests. The Child Custody Act authorizes the trial court to award custody and parenting time arising out of a child custody dispute and imposes a gatekeeping function upon the trial court to ensure the child's stability, as set forth in pertinent part in MCL 722.27:

> (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:
>
> (a) Award the custody of the child to 1 or more of the parties involved or to others and provide for payment of support for the child, until the child reaches 18 years of age. . . .
>
> (b) Provide for reasonable parenting time of the child by the parties involved, by the maternal or paternal grandparents, or by others, by general or specific terms and conditions. Parenting time of the child by the parents is governed by section 7a.[1]

---

characterization on appeal. However, plaintiff moved to modify parenting time, primarily in response to the oldest child's preferences and stage of development and the youngest child's need for private tutoring. That the children would attend Midland Academy of Advanced and Creative Studies was presented as a consequence that would follow from the trial court's grant of plaintiff's proposed modification of parenting time. Regardless of how plaintiff wishes to characterize this matter, it entails a request that affects custody.

(c) Subject to subsection (3)[5], modify or amend its previous judgments or orders for *proper cause shown or because of change of circumstances* until the child reaches 18 years of age and, subject to section 5b of the support and parenting time enforcement act, 1982 PA 295, MCL 552.605b, until the child reaches 19 years and 6 months of age. *The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.* The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. . . . [emphasis added].

## 1. PHYSICAL CUSTODY

Relevant to the case at bar, in a child custody dispute, MCL 722.27(1) allows a court to award custody to one or more of the parties and reasonable parenting time to the parties involved, both in accordance with the best interests of the child. Physical custody refers to a child's living arrangements. The Child Custody Act does not define "physical custody" or the often-used phrases "sole physical custody" and "primary physical custody." However, "[p]hysical custody" is defined under the Uniform Child-Custody Jurisdiction and Enforcement Act, MCL 722.1101 *et seq*., as "the physical care and supervision of a child." MCL 722.1102(n). Caselaw frequently uses "sole custody" and "primary physical custody" to distinguish an award of custody to one parent from an award of joint physical custody.

In contrast to awarding sole or primary physical custody to one parent, a trial court has the option of awarding the parties joint custody, i.e., joint legal and joint physical custody, and the court must consider an award of joint custody, at the request of either parent. MCL 722.26a(1). The term "joint physical custody" stems from MCL 722.26a(7)(a), which addresses a situation where "the child resides alternately for specific periods with each of the parents." The term "joint legal custody" stems from MCL 722.26a(7)(b), which addresses a situation where "the parents[] share decision-making authority as to the important decisions affecting the welfare of the child."

The parties in the instant case agree and the trial court record makes clear that the consent judgment of divorce gave defendant physical custody of the children and plaintiff liberal parenting time, which at the time of the motion at issue, entailed the children spending 140 overnights per year with him. The parties shared joint legal custody, and thus, they shared decision-making authority as to the important decisions affecting the welfare of their children.

---

[5] Subsection (3) is not relevant in the instant case.

-6-

## 2. PARENTING TIME

Parenting time is the time a child spends with each parent. "Whereas the primary concern in child custody determinations is the stability of the child's environment and avoidance of unwarranted and disruptive custody changes, the focus of parenting time is to foster a strong relationship between the child and the child's parents." *Shade*, 291 Mich App at 28-29. A court bases a parenting-time order on its determination of the best interests of the child, and grants parenting time "in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time." MCL 722.27a(1). The child has a right to parenting time unless the court determines on the record by clear and convincing evidence that parenting time would endanger the child's physical, mental or emotional health. MCL 722.27a(3). The trial court may consider the factors set forth in MCL 722.27a(7), along with the best interest factors provided in MCL 722.23, when granting parenting time. *Shade*, 291 Mich App at 31-32.

## 3. MODIFICATION OF PREVIOUS JUDGMENTS OR ORDERS OR ISSUANCE OF NEW ORDERS THAT AFFECT THE ESTABLISHED CUSTODIAL ENVIRONMENT

As set forth in MCL 722.27(1)(c), when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change in circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests. *Vodvarka* addresses the requisite standards for showing proper cause or a change in circumstances relative to requests to modify child custody. *Vodvarka*, 259 Mich App at 509-514. *Shade* addresses the requisite standards for showing proper cause or a change in circumstances relative to requests to modify parenting time. *Shade*, 291 Mich App at 28-30. Notably, where a proposed change in circumstances affects a child's established custodial environment, the applicable legal framework for analyzing the proposal is that set forth in *Vodvarka*. *Id*. at 27. An established custodial environment exists if "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to the permanency of the relationship shall also be considered." MCL 722.27(1)(c)

### a. Proper Cause or Change of Circumstances Threshold

To establish a change in circumstances sufficient for a court to consider modifying a custody order, the movant must prove by a preponderance of the evidence that "since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Vodvarka*, 259 Mich App at 513. "[T]he evidence must demonstrate "something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child." *Id*. at 513-514. "[T]o establish 'proper cause' necessary to revisit a custody order, a movant must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court." *Id*. at 512. As is the case with a change in circumstances, "[t]he appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being."

*Id.* If the movant does not establish proper cause or a change in circumstances, the trial court is prohibited from holding a child custody hearing:

> The plain and ordinary language used in MCL 722.27(1)(c); MSA 25.312(7)(1)(c) evinces the Legislature's intent to condition a trial court's reconsideration of the statutory best interest factors on a determination by the court that the party seeking the change has demonstrated either a proper cause shown or a change of circumstances. *It therefore follows as a corollary that where the party seeking to change custody has not carried the initial burden of establishing either proper cause or a change of circumstances, the trial court is not authorized by statute to revisit an otherwise valid prior custody decision and engage in a reconsideration of the statutory best interest factors.* [*Id.* at 508-509 (quotation marks and citations omitted) (emphasis in *Vodvarka*).]

The purpose of this threshold showing "is to minimize unwarranted and disruptive changes of custody orders, except under the most compelling circumstances." *Corporan*, 282 Mich App at 603.

As noted above, "[w]hereas the primary concern in child custody determinations is the stability of the child's environment and avoidance of unwarranted and disruptive custody changes, the focus of parenting time is to foster a strong relationship between the child and the child's parents." *Id.* at 28-29; MCL 722.27a. Thus, although normal life changes typically are insufficient to establish the proper cause or change in circumstances required to proceed to consideration of a child custody order, unless the requested change would alter the established custodial environment, such changes can be sufficient for a court to consider modification of a parenting-time order. See *Shade*, 291 Mich App at 29, 30-31. However, "[i]f a change in parenting time results in a change in the established custodial environment, then the *Vodvarka* framework is appropriate." *Shade*, 291 Mich App at 27. In other words, if a change in parenting time alters the established custodial environment, the normal changes that occur in a child's life "[would] not warrant a change in the child's custodial environment." *Id.* at 29.

b. Best Interests Analysis and Applicable Burden of Proof

If the movant seeking to change custody or parenting time successfully establishes proper cause or a change of circumstances under the applicable legal framework, the trial court must then evaluate whether the proposed change is in the best interests of the child by analyzing the appropriate best interest factors. In changes of custody, where the child has an established custodial environment with each parent, the movant must prove by clear and convincing evidence that the proposed change is in the best interests of the child. *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (2001). In a parenting-time matter, where the proposed change does not affect the established custodial environment, the movant must prove by a preponderance of the evidence that the change is in the best interests of the child. *Shade*, 291 Mich App at 23. However, as indicated above, where the proposed parenting-time change alters the established custodial environment, the proposal is essentially a change in custody, and *Vodvarka* governs. *Shade*, 291 Mich App at 27; see also *Pierron*, 486 Mich at 92-93 ("[W]hen considering an important decision affecting the welfare of the child . . . a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case."). Thus, after

identifying the proper burden of proof, a court then proceeds to consideration of the best interest factors. As this Court explained in *Shade*:

> Both the statutory best interest factors in the Child Custody Act, MCL 722.23, and the factors listed in the parenting time statute, MCL 722.27a([7]), are relevant to parenting time decisions. *Custody decisions require findings under all of the best interest factors, but parenting time decisions may be made with findings on only the contested issues.* [*Shade*, 291 Mich App at 31-32 (emphasis added).]

If the movant cannot meet the applicable burden of proof, the court shall not grant the proposed change. MCL 722.27(c).

## C. APPLICATION

In light of the foregoing legal standards, we conclude that the trial court committed clear legal error in its choice and application of the legal framework under which to analyze plaintiff's motion. Notwithstanding the label plaintiff gave his motion or his inaccurate assertion that the proposed "swap" in parenting time would produce "no material change in the amount of time the children spend in each household," plaintiff's proposed modifications to parenting time effectively changed physical custody of the children from defendant to plaintiff.

The parties' judgment of divorce awarded legal custody to both parents, but physical custody of the children to defendant; the judgment did not award the parties joint physical custody.[6] As noted above, an award of physical custody primarily or solely to one party typically entails a situation in which the children receive physical care and supervision primarily from the parent awarded that status. Such is the case here. In accordance with the parties' agreement that defendant would be the children's primary physical custodian, the children in the case at bar have resided with and been cared for and supervised primarily by defendant since entry of the judgment of divorce. Thus, it defies the plain meaning of the word "primary," as well as rudimentary mathematics, to say that reducing the primary custodian's overnights with the children from 225, or nearly 62% of the calendar year, to 140, or approximately 38% of the calendar year, does not change primary physical custody. By proposing a reduction in the

---

[6] Notwithstanding plaintiff's assertion to the contrary, the February 23, 2011, order does not expressly provide for joint physical custody; rather, it changes parenting time as indicated elsewhere in this decision, and provides that "all other orders remain in full force and effect." Further, the Clinton County friend of the court referee who heard defendant's December 2013 motion for a change in parenting time noted that the effective order gave the parties joint legal custody and defendant "primary physical custody" of the children. In addition, after defendant argued that plaintiff's motion to change parenting time would actually change custody, the trial court appears to have acknowledged as much, noting that the outcome of plaintiff's motion would "change the label that's in the prior order." The only order that provided any "label" regarding custody was the judgment of divorce. Presumably, therefore, the trial court meant that the successful outcome of plaintiff's motion would render him primary physical custodian of the children.

number of overnights the children spend with defendant to a distinct minority of the year, plaintiff was proposing a change in custody, regardless of the label he gave his motion. Accordingly, the proper legal standard under which to review his motion was the more burdensome and restrictive standard set forth in *Vodvarka*, not the less restrictive legal framework set forth in *Shade*, and the first issue the trial court had to consider was whether plaintiff established proper cause or a change in circumstances that met the standards set forth in *Vodvarka*.[7]

Even if we were to accept plaintiff's characterization of his motion as one simply to modify parenting time and change schools[8], we nevertheless would hold that the trial court committed reversible error by finding, against the great weight of the evidence, that plaintiff's proposed change would not affect the established custodial environment the children share with defendant and, consequently, by not analyzing the motion under the applicable legal framework set forth in *Vodvarka*. *Shade*, 291 Mich App at 27 ("If a change in parenting time results in a change in the established custodial environment, then the *Vodvarka* framework is appropriate.").

This Court addressed a similar issue in *Pierron*, 282 Mich App 222 (2009). The trial court found *Pierron* to be "very close on point"; unlike the trial court, however, we find that

---

[7] Plaintiff admits that normal life changes are not sufficient to meet the *Vodvarka* threshold when it comes to a change in physical custody. Defendant accurately questions whether plaintiff's evidence regarding the younger child's academic performance and the older child's shared interests with plaintiff meets the *Vodvarka* standard for proper cause or a change in circumstances.

Contrary to our dissenting colleague's representation in Section VI of his opinion, the younger child was not performing at the 29th and 27th percentile in reading and mathematics, respectively, when the issue of proper cause or a change of circumstances was before the trial court. Rather, those figures were calculated by Sylvan Learning Center when first assessing the child in the second half of third grade. Both parents thereafter undertook various efforts to improve their child's academic performance. His performance levels at the time of the evidentiary hearing after fourth grade placed him at the 50th percentile in reading and 64th percentile in math, according to Sylvan Learning Center. Plaintiff was suggesting that he could provide even more tutoring if the child lived with him, and the goal would be for the child to become college ready upon graduation.

[8] We find it bears repeating that a party's label is not dispositive of the substance of that party's motion. Otherwise, parties would simply label change of custody matters as a change in parenting time in order to benefit from the lower threshold set forth in *Shade*. In no world can a change from 225 overnights to 140 overnights be considered simply a change of parenting time and not a change in physical custody where the parties do not share joint physical custody. And if they do share joint physical custody, a reduction from 225 overnights to 140 overnights (85 days), would likely affect the established custodial environment, much like plaintiff argued when opposing defendant's December 2013 motion with regard to a reduction of 52 days in his parenting time.

*Pierron* supports defendant's position, not plaintiff's. In *Pierron*, the defendant-mother had sole physical custody of the minor children and the parties shared joint legal custody. *Id*. at 225-226. At the time of the judgment of divorce, both parents lived in Grosse Pointe Woods, and the children attended Grosse Pointe Public Schools. *Id*. at 226. When the defendant later purchased a house in Howell and sought to enroll the children in Howell Public Schools, the plaintiff-father moved to prevent the change in school districts on the ground that it would significantly modify the children's established custodial environment. *Id*. at 227-229.

Subsequent to a six-day hearing, the circuit court found that the children had established custodial environments with both parents and that the defendant's removal of the children to Howell Public Schools would change the established custodial environment of the children. *Id*. at 230-232. The circuit court determined that, because the change in schools would alter the established custodial environment, the defendant had to prove by clear and convincing evidence that such change was in the children's best interests. *Id*. at 232. After conducting a best-interest analysis, the trial court found that the defendant had not met her burden of proof and, therefore, granted the plaintiff's request that the children remain enrolled in Grosse Pointe Public Schools. *Id*. at 242. The defendant appealed this ruling.

On appeal, this Court agreed with the trial court that the children had an established custodial environment with both parents, but concluded that the court erred "when it found that the proposed change of school districts would alter the children's established custodial environment." *Id*. at 248. The Court pointed out at the outset that primary physical custody would not change in order to accommodate the change of schools:

> We first note that the proposed change of school districts *would not have changed the actual custody arrangements* in this case. *Defendant has at all times had primary physical custody* of the children since the parties' divorce, and plaintiff has seen and interacted with the children only during his parenting time. Enrollment of the children in the Howell Public Schools *would not alter this arrangement in any way—defendant would still maintain primary physical custody*, and plaintiff would still be free to exercise liberal and reasonable parenting time just as he had done before the change of school districts. [*Id*. at 248-249 (emphasis added).]

Although the Court acknowledged that the change "might require minor modifications to [the] plaintiff's parenting time schedule," it did not rise to the level of affecting the children's established custodial environment with the plaintiff. *Id*. at 249. The Court explained why as follows:

> Since the divorce, defendant has always been the primary physical custodian of the minor children. In contrast, plaintiff has seen the children and exercised parenting time only when his personal and work schedules have accommodated it. Enrolling the children in the Howell Public Schools quite simply would not alter this arrangement. Plaintiff would still be free to exercise parenting time with the children after school and on weekends and holidays. Such a schedule would not be materially different than plaintiff's current parenting time schedule. [*Id*. at 250.]

As such, the defendant was required only to prove by a preponderance of the evidence that such a change was in the best interests of the children, *id*., and even then, only the best interest factors relevant to a school change were necessary to evaluate, *id*. at 250-253. The Michigan Supreme Court granted the plaintiff's application for leave to appeal and affirmed this Court's analysis and conclusion regarding whether the proposed change in schools would affect the plaintiff's established custodial environment. *Pierron*, 486 Mich at 86-87.

*Pierron* supports the conclusion that a substantial modification of parenting time would alter the established custodial environment that the children have with defendant. Whereas minor modifications that leave a party's parenting time essentially intact do not change the party's established custodial environment, see *id*. at 87, significant changes do. See also *Rains v Rains*, 301 Mich App 313, 323-324; 836 NW2d 709 (2013) (indicating that even where parents have joint physical custody and have established a "joint custodial environment," changes that substantially reduce the time a parent spends with a child would potentially cause a change in the established custodial environment); *Shade*, 291 Mich App at 25-28 (where a change in parenting time did not affect the established custodial environment because it left the parties with approximately the same number of parenting time days); *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008) (holding that a modification of "parenting time" that would relegate a parent who was equally active in the child's life to the role of a "weekend parent" would amount to a change in the established custodial environment with that parent); *Brown v Loveman*, 260 Mich App 576, 596; 680 NW2d 432 (2004) (indicating that modification of parenting time from nearly equal parenting time to one party having parenting time during the school year and the other having parenting time during the summer "necessarily would amount to a change in the established custodial environment").

In the instant matter, the plaintiff's proposal would reduce the children's overnights with defendant from 225 per year to 140 per year; that 85-day reduction is a nearly 40% decrease in the time the children would spend with defendant. She would spend her time with the children primarily on the weekends and in the summer. "If a change in parenting time results in a change in the established custodial environment, then the *Vodvarka* framework is appropriate." *Shade*, 291 Mich App at 27. Accordingly, even if one could construe plaintiff's motion as simply one modifying parenting time, the *Vodvarka* framework would still apply because the proposed changes would alter the children's established custodial environment.

Plaintiff attempts to rebut defendant's argument about being relegated to a weekend/summer parent by contending that, as shown in *Pierron*, the distance between defendant's and his home and the school need not impact the equation, and here, the parties have lived a significant distance from one another for years. Plaintiff points out that the distance change in *Pierron* was "far more substantial, yet it was allowed." However, the change in *Pierron* was allowed because, notwithstanding the distance from Grosse Pointe Woods to Howell, custody did not change and the change in schools necessitated only minor modifications in plaintiff's exercise of parenting time, not the nearly 40% reduction in defendant's parenting time called for here.

Plaintiff also argues that the ten weeks of parenting time during summer vacation that his proposal allows defendant "has the effect of preserving and promoting the custodial environment that the children have with [defendant]." However, plaintiff's emphasis on the long stretch of

summer parenting time defendant would have with the children does not minimize the fact that defendant loses more than 12 weeks of parenting time under plaintiff's proposal. Further, central to the children's established custodial environment with defendant was the support and guidance defendant gave and the material needs she met relative to the children's school attendance. To the extent that plaintiff's proposed modification of parenting time not only substantially reduced the time defendant spent with the children, but also the character of her interaction with the children, the proposal significantly alters the children's established custodial environment with defendant. Finally, plaintiff argues that the determinative factor is not the reduction in defendant's day-to-day contact with the children, but the "record showing that the children's best interests would be served by having plaintiff take over the day-to-day management of the children's education that determined the result in this case." This argument misses the point that, before the court can even consider whether a proposed custodial change is in the best interests of the children, it must first determine whether the movant has made the required showing of proper cause or a change in circumstances. In this case, under either a custody analysis or a parenting time analysis, the applicable legal framework for determining whether the threshold showing has been made is that found in *Vodvarka,* and the trial court erred when it incorrectly applied the law in this instance. See *Shade*, 259 Mich App at 27.

## III.  RESPONSE TO THE DISSENT

We agree with the dissent on a number of issues. We agree with the dissent's explication of the law governing child custody and parenting time decisions, that the Legislature's intent is to provide for the best interests of the children, which includes preventing unwarranted changes in custody and parenting time. We also agree that a grant of physical custody is irrelevant to the factual question of whether and with whom a child has an established custodial environment. Additionally, we agree that the trial court properly decided that the children at issue have an established custodial environment with each parent. However, we disagree on two key issues.

First, without imputing any improper intention, we see in plaintiff's motion an attempt to change primary physical custody under the guise of a change in parenting time. This attempt may arise from plaintiff's interpretation of the February 23, 2011 stipulated modification of parenting time as a stipulation to joint legal and joint physical custody. However, as we pointed out in the main opinion, defendant disputes this interpretation, and the referee who heard defendant's December 2013 parenting-time motion understood the judgment of divorce to continue to govern the custodial arrangements. Nevertheless, because the proposed change is essentially a change in physical custody, the first question is whether plaintiff has met *Vodvarka's* more stringent threshold showing to proceed to a best interests hearing.

Second, even if we did view the proposed change as merely a change in parenting time (that also entailed a move from DeWitt to Midland), the caselaw cited in our decision compels us to conclude that a change of the magnitude suggested affects the children's established custodial environment with both parents, again making *Vodvarka* the proper legal framework for resolving the dispute. Sometimes, judges must agree to disagree; this case presents just such an occasion.

## IV.  CONCLUSION

The trial court committed "clear legal error" in its selection and application of the governing law. Because the effect of granting plaintiff's motion was a change in physical custody, the trial court should have applied the legal standards set forth in *Vodvarka* to determine

whether "proper cause" or a "change of circumstances" was sufficient to reopen the custody issue. Even if the trial court had been correct in treating plaintiff's motion as one to modify parenting time, because the proposed modification would modify the children's established custodial environment, *Vodvarka* remained the proper threshold standard before evaluating whether such proposed modification was in the best interests of the children. *Shade*, 259 Mich App at 27. In light of these errors, we vacate the trial court's order and remand for further proceedings in compliance with the statutory requirements of the Child Custody Act and relevant caselaw regarding a change of custody. Assuming on remand that the trial court finds by a preponderance of the evidence that plaintiff has met the *Vodvarka* standard, plaintiff must still prove by clear and convincing evidence that plaintiff's proposed change is in the best interests of each of his children.[9] *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (noting, "[t]his higher standard applies when there is an established custodial environment with both parents"). In doing so, the court must evaluate all of the best interest factors set forth in MCL 722.23, and not just in relationship to the contested issues. See *Shade*, 291 Mich App 31-32.

Vacated and Remanded. We do not retain jurisdiction. Defendant, as the prevailing party, may tax costs. MCR 7.219.

/s/ Jane M. Beckering
/s/ Michael J. Kelly

---

[9] The Court further stresses that the best interests of each child must be considered before the child's established custodial environment may be changed. Although the trial court may certainly take into account the siblings' desire to be with one another, it may not change one child's established custodial environment based solely on the best interests of the other child. See MCL 722.27(1)(c) ("The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.")